**NOT RECOMMENDED FOR PUBLICATION**
File Name: 13a0140n.06

**No. 11-2454**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Feb 07, 2013**
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| GREGORY MENOVCIK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| BASF CORPORATION, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

Before: SILER, GRIFFIN, and STRANCH, Circuit Judges.

**SILER**, Circuit Judge. Appellant Gregory Menovcik filed suit against his former employer, BASF Corporation, asserting various state and federal claims. A jury found in favor of BASF on all counts. Menovcik appeals, arguing that the district court abused its discretion when it barred one of his potential witnesses from testifying. For the following reasons, we **AFFIRM.**

**I. BACKGROUND**

Menovcik began his career with BASF's predecessor in 1979. He held the position of Technical Manager at BASF's Southfield, Michigan facility when he was fired for misconduct in 2009. Following his termination, Menovcik filed suit against BASF, alleging unlawful age discrimination, breach of contract, defamation, intentional infliction of emotional distress ("IIED"), and violations of the Employee Retirement Security Income Act ("ERISA").

The district court granted summary judgment for BASF on the IIED claim. The matter proceeded to trial, where the jury found for BASF on all remaining claims. At trial, several of BASF's employees testified on its behalf. One employee, Dr. Paul Harris, described Menovcik as having "four distinct personalities," one of which was "eyeball[] popping" mad. He stated that Menovcik was abusive toward him and threatened to retaliate if any employee reported his conduct to BASF's Human Resources Department. Don Campbell, a chemist, reported that he felt as if he "couldn't disagree with [Menovcik] without fear of . . . being fired." Tim December, another chemist reporting directly to Menovcik, testified that Menovcik told him to never question him or he would be placed on a Performance Improvement Plan. He also directed December not to talk to others about him or go to Human Resources. Another employee, Pat Mormile, testified that Menovcik was vindictive and routinely made inappropriate and disparaging comments about other employees. While another of Menovcik's subordinates, Hans Fuchs, did not testify, other testimony suggested that Fuchs had not had any problems with Menovcik.

Shortly before trial, the parties submitted a Joint Pretrial Order, which included a list of the witnesses each expected to call to testify. Pursuant to the applicable local rule, litigants are barred from including witnesses in a final pretrial order who were not included in a witness list submitted under a prior order. *See* E.D. Mich. LR 16.2(b)(8). Menovcik listed Tom Bailey as a may-call witness. BASF listed three may call-witnesses–Peter Pascarosa, Michael Pcolinski, and David Imrick. Menovcik moved to prevent BASF from calling these three individuals because they had not been identified specifically in BASF's March 2010 witness list. BASF responded by arguing that the individuals should be permitted to testify because they were identified through general categories

in BASF's witness list. Further, BASF argued, if its may-call witnesses were barred from testifying, Bailey should be as well, because he was not identified specifically in Menovcik's witness list, which was filed in April 2010. The district court barred Pascarosa, Pcolinski, Imrick, and Bailey from testifying. On the first day of trial, Menovcik asked the court to reconsider its ruling and allow Bailey to testify. The district court denied the motion.

## II. ANALYSIS

Menovcik contends that the trial court's decision must be reversed because it was premised on a fundamental misunderstanding of the underlying facts. Indeed, the trial court made no distinction between the four barred witnesses. A distinction did exist, however. Bailey was named in Menovcik's spring 2010 witness list, while Pascarosa, Pcolinski, and Imrick were not mentioned in BASF's list. It appears that their three names materialized, for the first time, in the parties' Joint Pretrial Order. Since the trial court offered no alternative explanation for its exclusion of Bailey's testimony, it must have accepted BASF's argument that Bailey had not been identified with sufficient particularity prior to the Joint Pretrial Order.

Assuming, *arguendo,* that the exclusion of Bailey's testimony was an abuse of the trial court's discretion, Menovcik's failure to demonstrate prejudice precludes reversal of the case. The harmless error standard, which applies to the admission or exclusion of evidence, was discussed extensively in *Beck v. Haik,* 377 F.3d 624, 634-35 (6th Cir. 2004) (overruled on other grounds). "[E]rroneous rulings are grounds for reversal only when 'a substantial right of [a] party is affected.'" *Id.* at 634 (citing Fed. R. Evid. 103(a); *Rye v. Black & Decker Mfg. Co.,* 889 F.2d 100, 103 (6th Cir.

1989)) (second alteration in original).   While the term "substantial right" may elude precise

definition*,* we have explained it the following way:

> Th[e] inquiry involves an assessment of the likelihood that the error affected the outcome of the case.  As the Supreme Court has described the test:  "[I]f one cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected."

*Id.* (quoting *Schrand v. Fed. Pac. Elec. Co.,* 851 F.2d 152, 157 (6th Cir. 1988) (citation omitted)

(alterations in original).  Accordingly, Menovcik is not required to establish that, without question,

a different outcome would have resulted had Bailey been permitted to testify at trial.  Rather, he must

establish that the judgment against him was substantially swayed by the absence of Bailey's

testimony.  He has failed to make this showing.

In response to BASF's motion for summary judgment, Menovcik submitted Bailey's affidavit

in which  Bailey stated that he had worked for BASF from 1982 until his termination in 2009.

Although he did not work directly under Menovcik, occasionally he worked on specific projects

where he did report to Menovcik.  He described Menovcik as a "serious and demanding boss" that

was "in every respect scrupulously fair."  Bailey "never observed Mr. Menovcik raise his voice or

otherwise express anger."  He further stated that Menovcik was "the best boss [he] ever had while

working at BASF."  Additionally, he described a meeting that occurred on March 13, 2009–where

staff members were advised that Menovcik's employment had been terminated and that he had been

"escorted from the premises" for "violating BASF's Code of Conduct."  He stated that the meeting

lasted approximately sixty seconds and that no further explanation was given for Menovcik's

termination. Menovcik contends that Bailey's testimony would have "substantially altered the overall tenor and tone of the proceeding."

Menovcik himself testified and, thus, had an opportunity to refute the negative characterization of him presented through BASF's witnesses. While Bailey's testimony might have bolstered Menovcik's, it cannot be said that its absence substantially affected the outcome of the trial. BASF presented the testimony of several of Menovcik's colleagues, who testified in detail regarding specific instances of Menovcik's misconduct. One employee, Fuchs, who apparently got along well with Menovcik, was included in Menovcik's witness list but was not called to testify. While Menovcik had the opportunity to call other witnesses that were included in his witness list, he chose not to do so. The only witnesses he presented were himself and Ken Perry–his former supervisor and current BASF employee. Perry conceded that he had rated Menovcik "fairly highly" on performance reviews and that, at one point, he thought Menovcik did a "great job monitoring and coaching" his subordinates. His testimony further suggested that he was unaware of any performance problems until he was approached by one of Menovcik's subordinates, Mormile. It was only after Mormile's complaint that BASF conducted an investigation and learned the extent of Menovcik's inappropriate behavior.

It is highly unlikely that the jury verdict would have been affected by Bailey's testimony. Bailey's affidavit focused on his relationship with Menovcik–that he liked Menovcik and thought he was a good boss. The jury had the opportunity to assess the credibility of all witnesses, including Menovcik himself. Menovcik contends that Bailey's testimony was particularly important with respect to his defamation claim, which was based on what was said during the meeting at which

BASF officials announced the termination of his employment. Other staff members, who were also present at that meeting, testified at trial. Accordingly, Menovcik had the opportunity to cross-examine them with respect to what was said during the meeting and afterwards. Further, the only meeting-related testimony Bailey would have contradicted dealt with whether management encouraged the attendees to report workplace misconduct. Ultimately, it is very unlikely that the moderately favorable testimony of one individual would have affected the outcome of the trial. Accordingly, we can say–with fair assurance–that the verdict was not substantially swayed by the exclusion of Bailey's testimony.

**AFFIRMED.**